# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **JERMAINE KING,** | Case No. 1:19 CV 2159 |
| Petitioner, | Judge Donald C. Nugent |
| v. | Magistrate Judge James R. Knepp II |
| **WARDEN TIM BUCHANAN,** | |
| Respondent. | **REPORT AND RECOMMENDATION** |

## INTRODUCTION

*Pro se* Petitioner Jermaine King ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden Tim Buchanan ("Respondent") filed an Answer (Doc. 6) and Petitioner filed a Reply (Doc. 8). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Doc. 3). For the reasons discussed below, the undersigned recommends the Petition be denied.

## FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Eighth District Court of Appeals set forth the following facts on direct appeal:

{¶ 3} In September 2017, King was named in a four-count indictment, charging him with attempted rape in violation of R.C. 2923.02 and 2907.02(A)(2); rape in violation of R.C. 2907.02(A)(2); rape in violation of R.C. 2907.02(A)(2); and kidnapping in violation of R.C. 2905.01(A)(4), with a sexual motivation specification.

{¶ 4} In December 2017, King withdrew his previously entered plea of not guilty and entered a plea of guilty to rape, as charged in Count 3 of the indictment. The remaining counts were nolled. Following a Crim.R. 11 plea colloquy, the trial court accepted King's plea and found him guilty of rape. Before sentencing, however, King filed a motion to withdraw his plea. In the motion, King alleged that he "did not fully comprehend what he was pleading to" because "he was given the medication, Zoloft, prior to entering his plea."

{¶ 5} At the onset of the motion to withdraw hearing, the trial court stated that based on the argument raised in King's motion, it contacted the county jail psychiatric unit to determine what medications King was prescribed, whether he was compliant with those medications, and whether the side effects of the medication would impair the validity of his plea. The court stated that it learned from staff members at the psychiatric unit that King was compliant with his Zoloft medication, but that "the side effects that [King] was complaining of * * * are not side effects of that medication." The court stated that the medication "wouldn't cause drowsiness or inability to understand what was going on." Thereafter, the court provided the parties with the opportunity to be heard.

{¶ 6} With respect to the trial court's statements, counsel for King maintained that King was entitled to withdraw his guilty plea because King "feels that he was not in his right mind" at the time he entered his plea. Counsel advised the court that after King entered his guilty plea, he mentioned to counsel that he "really [didn't] understand what was going on" in his case.

{¶ 7} At the conclusion of the hearing, the trial court denied King's motion to withdraw his guilty plea, stating, in relevant part:

> After reading basically through the entire plea colloquy now on the record and holding this hearing I do not believe that grounds exist to vacate the plea. So I'm not going to permit that to happen so the plea stands.

The matter proceeded to sentencing, and the trial court imposed a seven-year term of imprisonment.

*State v. King*, 2018 WL 6317946 (Ohio Ct. App.).

**PROCEDURAL HISTORY**

Indictment and Guilty Plea

In September 2017, a Cuyahoga County grand jury indicted Petitioner on one count of attempted rape, two counts of rape, and one count of kidnapping. (Ex. 1, Doc. 6-1, at 4-5). Through counsel, Petitioner entered a not guilty plea. (Ex. 2, Doc. 6-1, at 7).

In December 2017, Petitioner appeared in court to enter a guilty plea. *See* Ex. 3, Doc. 6-1, at 8); *see also* Doc. 6-2 (Transcript). During the change of plea hearing, the prosecutor described a plea agreement in which the State agreed to nolle three charges if Petitioner agreed to plead guilty to the single count of rape. (Doc. 6-2, at 5-6). Petitioner's counsel stated he had discussed the plea with Petitioner that morning, and "at this particular time my client is on board with a plea to one count of rape, that would be Count 3." *Id.* at 7. The trial court inquired of Petitioner's age (44) and education level (11th grade), and ascertained that no threats or promises were made in exchange for his guilty plea. *Id.* at 7-8. When asked whether he was taking medication, Petitioner responded "Yes". *Id.* at 8. He answered the questions "Are you thinking clearly? and "Do you understand everything that's happening?" in the affirmative. *Id.* The trial court then described the possible penalties, including a prison term (three to eleven years), a fine, post-release control, and sexually-oriented offender classification. *Id.* at 8-9. It further explained Petitioner's rights and that he was giving up those rights by pleading guilty. *Id.* at 9-11. At this point in the hearing, Petitioner's counsel indicated his client had a question. *Id.* at 11.

> [Defense counsel]:     One moment, Your Honor. My client has a question, but let's hold onto the question at the moment. Do you plan on doing sentencing at this particular time, or wait?
>
> [The Court]:     I think I'm going to wait a day or two.
>
> [Defense Counsel]:     I'd like him to - - We're set. Thank you.

3

| | |
|---|---|
| [The Court]: | I just want to make sure, Mr. King, does your question have anything to do with whether or not you want to plead today? Or is it something you wanted me to hear at the sentencing? |
| [Petitioner]: | You can hear it at the sentencing. |

*Id.* at 11. The court then returned to explaining the rights Petitioner would give up by pleading guilty. *Id.* at 11-13. The court then asked:

| | |
|---|---|
| [The Court:] | Do you have any questions about the trial, the rights you have at trial, or what you're giving up by pleading guilty? |
| [Petitioner]: | No. |
| [The Court]: | Do you want a trial? |
| [Petitioner]: | No. |

* * *

| | |
|---|---|
| [The Court]: | I haven't promised you any sentence. I don't know anything about this case except for the plea I'm taking from you, do you understand? |
| [Petitioner]: | Yes. |
| [The Court]: | Do you have any questions before I accept your plea? |
| [Petitioner]: | No. |
| [The Court]: | Let the record reflect that I'm satisfied that Mr. King has been informed of his constitutional rights, that he understands the nature of the charges, the effect of the plea, and the maximum sentence that can be imposed. Mr. King, I find you're going to make a knowing, voluntary, and intelligent plea. That means you know what you're doing today. You know what you're doing? |
| [Petitioner]: | Yes. |
| [The Court]: | You understand it? |
| [Petitioner]: | Yes. |
| [The Court]: | And do you want to do it? |

4

| | |
|---|---|
| [Petitioner]: | Yes. |
| [The Court]: | As to Count 3, rape, a felony of the first degree, it carries a mandatory prison term of three to 11 years, a fine of up to $20,000, five years of mandatory post-release control, and classification I'm going to say as a sexually oriented offender 10 years. We still have to do the hearing, though, right? |
| | One time per year you'll have to report to the sheriff, and I'll go over the rest of the reporting requirements at the time I sentence you. |
| | How do you want to plead there, Mr. King? |
| [Petitioner]: | Guilty. |

*Id.* at 13-15. The trial court then accepted Petitioner's guilty plea and set sentencing for two days later. *Id.* at 15-16.

<u>Motion to Withdraw</u>

Petitioner returned to court on the sentencing date. *Id.* at 18. The court noted Petitioner's counsel "brought to [its] attention that it is Mr. King's desire to withdraw his formerly entered plea of guilty and go back into the not guilty status." *Id.* The court requested a formal motion from Petitioner's counsel and noted it would permit the State time to respond. *Id.* at 19. The court further ordered a copy of the plea hearing transcript and stated it asked the jail psychiatric unit to provide Petitioner's medication list and information regarding medication compliance. *Id.*

Petitioner, through counsel, then filed a motion to withdraw his guilty plea. (Ex. 4, Doc. 6-1, 10-14). In his memorandum in support, Petitioner argued he "did not make the Court or his attorney aware of the fact that he was given the medication *Zoloft*, prior to entering his plea" and "[h]e maintains that he did not fully comprehend what he was pleading to on the day of sentencing [sic]." *Id.* at 13. The State filed a brief in opposition. (Ex. 5, Doc. 6-1, at 16-27).

The trial court then held a hearing on Petitioner's motion. (Doc. 6-2, at 23-50). The trial court indicated it had "called the Psychiatric Unit . . . to find out about the medication that Mr.

5

King was on and if he - - what type of side effects that medication had, so he apparently is taking - - he is taking both verified by them and part of the transcript." *Id.* at 24. It further stated the jail psychiatric unit indicated "[t]he side effects that he was complaining of in court are not side effects of [Petitioner's] medication", *id.*, and that Petitioner's medications "wouldn't cause drowsiness or inability to understand what was going on", *id.* at 26; *see also id.* at 28-29 (describing trial court conversations and emails with jail psychiatric unit). Petitioner's counsel told the court:

> Yeah, he was somewhat compliant, somewhat - - did understand what we were talking about but maybe not totally.
>
> * * *
>
> You know, afterwards when we - - when he was back in the - - after court after [Petitioner] pled guilty, he mentioned to me that he really doesn't understand what was going on even after we spent some time together earlier that day before we came into court when I went over the plea with him. So maybe I should have brought that to the Court's attention prior to taking the plea, which I did not; I thought he understood but possibly not so I'm a little concerned about the fact that it is a very serious case.
>
> A couple of lives are involved and we bring to the Court's attention the fact that he feels that he was not in his right mind; however, you want to say that, I just call it as it is. And I think that maybe he should get a chance to go to trial, which is what he wants to do.

*Id.* at 30-31. Counsel further stated that prior to the change of plea hearing, he went over the case with Petitioner, explained who was going to testify, the offer from the prosecutor, and his opinion that the offer was an acceptable one. *Id.* at 32 ("I think we talked about it a number of times actually, the resolution of the case, as to what the plea agreement would be but - - in my opinion I think the plea is good, but my client doesn't think so and he's going to ask the Court to withdraw his plea and go to trial.").

   In response, the State argued being on medication was not a reason to withdraw a plea, Petitioner had not complained of side effects from medication to jail staff, and cited the trial court's

conversation with the psychiatric unit indicating the side effects of which Petitioner was complaining were not associated with his medication. *See id.* at 32-38.

The trial court then put in the record an email he sent to the jail psychiatric unit stating: "'Can you tell me again what the side effects of Zoloft are. Is confusion one'?" *Id.* at 47. It stated the nurse from the unit replied: "Unfortunately, confusion is not a side effect of Zoloft." *Id.* The trial court then stated: "After reading basically through the entire plea colloquy now on the record and holding this hearing I do not believe that grounds exist to vacate the plea. So I'm not going to permit that to happen so the plea stands." *Id.* at 48. The trial court further stated: "The record should also reflect with my ruling, [defense counsel] is a very qualified attorney[.]" *Id.* at 49; *see also* Ex. 6, Doc. 6-1, at 29 (journal entry denying motion to withdraw plea).

In January 2018, the trial court sentenced Petitioner to seven years in prison for the rape conviction. (Ex. 7, Doc. 6-1, at 30-31); Doc. 6-2, at 51-74 (sentencing hearing).

Direct Appeal

Petitioner, through new counsel, filed a timely notice of appeal to the Ohio Eighth District Court of Appeals. (Ex. 8, Doc. 6-1, at 33-34).[1] In his brief, he raised a single assignment of error: "The trial court err[ed] by denying appellant's motion to vacate his guilty plea." (Ex. 9, Doc. 6-1, at 36-46). The State filed a brief in opposition. (Ex. 10, Doc. 6-1, at 48-64). On November 29, 2018, the appellate court affirmed the judgment of the trial court. (Ex. 13, Doc. 6-1, at 76-86); *King*, 2018 WL 6317946.

On February 4, 2019, Petitioner filed an untimely *pro se* notice of appeal with the Ohio Supreme Court (Ex. 14, Doc. 6-1, at 87-88), and motion for delayed appeal (Ex. 15, Doc. 6-1, at

---

1. The appellate court *sua sponte* ordered, and Petitioner subsequently filed, an amended notice of appeal to eliminate use of the victim's name. (Exs. 11-12, Doc. 6-1, at 65-75).

89-91). The Ohio Supreme Court granted Petitioner leave to file a delayed appeal. (Ex. 16, Doc. 6-1, at 105). In his memorandum in support of jurisdiction, Petitioner raised a single proposition of law: "The trial court abused its discretion in denying Appellant's Motion to Withdraw Guilty Plea in violation of Appellant's rights under Ohio Criminal Rule 32.1 and the United States and Ohio Constitutions. (Ex. 17, Doc. 6-1, at 106-15).[2] The state filed a waiver of memorandum in response. (Ex. 19, Doc. 6-1, at 135). On June 26, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to Ohio Supreme Court Practice Rule 7.08(B)(4)

## FEDERAL HABEAS CORPUS

In the instant Petition, filed September 8, 2019[3], Petitioner asserts two related grounds for relief:

> **GROUND ONE**:     The trial court erred in denying Petitio[ner]'s motion to withdraw guilty plea in violation of rights under the United States and Ohio Criminal Rule 32.1 [;] and was denied the effective assistance of counsel guaranteed by the Sixth Amend[]ment of the United States Constitution thus, his guilty plea was not entered in a knowing, voluntary and intelligent manner.

> **GROUND TWO:**     Trial court's failure of full and fair consideration.

(Doc. 1).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be

---

2. Petitioner also subsequently filed an amended memorandum in support of jurisdiction that included the appellate court decision. (Ex. 18, Doc. 6-1, at 116-34).

3. Pursuant to the federal prison mailbox rule, a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). *See* Doc. 1, at 9 (representing Petition was placed in the prison mailing system on September 8, 2019).

given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

A state court's decision must be "objectively unreasonable", not merely erroneous or incorrect, for a court to grant habeas relief. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## DISCUSSION

Petitioner's grounds for relief, in totality, amount to an overarching claim that his motion to withdraw his guilty plea was wrongfully denied. The undersigned addresses each contention below, and for the reasons discussed, recommends the Petition be denied.

Ineffective Assistance of Counsel

Petitioner contends his trial counsel was ineffective for: (1) failing to challenge the adequacy of the evidence to support his guilt, and (2) advising him to plead guilty. The undersigned finds the first argument is procedurally defaulted, and the second argument meritless on AEDPA review.

*Failure to Challenge Evidence*

A petitioner must exhaust his state remedies for each ground for relief prior to raising those grounds in habeas corpus proceedings. 28 U.S.C. § 2254(b), (c). This exhaustion requirement is met "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.3d 878, 881 (6th Cir. 1990).

A petitioner must raise and pursue a particular claim through a state's ordinary procedures for appeal, or it is procedurally defaulted. *Id.*, *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) ("[A] claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule."). Ohio law bars a petitioner from raising claims in post-conviction proceedings if those claims could have been raised on direct appeal. *See Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); Ohio Rev. Code § 2953.21(A).

A procedural default may be excused if the petitioner can either: show "cause for the default and actual prejudice" resulting from the error, or "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). To show cause for the

default, the petitioner must show that some objective factor prevented his compliance with state procedures. *Murray v. Carrier*, 477 U.S. 478, 494–95 (1986). To show resulting prejudice, the petitioner must demonstrate that the proceedings were "infected with constitutional error." *Id.* To successfully argue that "failure to consider the claims will result in a fundamental miscarriage of justice," a petitioner must supply reliable evidence of his innocence. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner contends he was denied effective assistance of counsel because counsel "egregiously overlooked the lack of evidence" of Petitioner's guilt on the state charges. (Doc. 1, at 5). Specifically, Petitioner argues, "[t]he state presented no DNA evidence, no[] statement from the alleged victim concerning being kidnapped and raped." *Id.* This argument was not, however, raised through the state appellate process. *See* Ex. 9, Doc. 6-1, at 36-46; Exs. 17-18, Doc. 61, at 106-34. Although Petitioner arguably raised an ineffective assistance of counsel claim on direct appeal (discussed further below), he did not raise one on this factual basis; as such, the claim is defaulted. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Petitioner does not attempt to show cause for the default and actual prejudice. And although Petitioner states that "[n]othing in the record could support a conviction" (Doc. 1, at 5), he does not provide evidence that would support his innocence; he therefore cannot successfully pass through the fundamental miscarriage of justice gateway. *See Coleman*, 501 U.S. at 750; *Schlup*, 513 U.S. at 324. Petitioner's claim that counsel was ineffective for overlooking the lack of evidence for Petitioner's guilt is therefore procedurally defaulted and cannot be considered by this Court.[4]

---

4. Further, any such claim is waived by Petitioner's guilty plea, which, as discussed in greater detail below, the state court reasonably found to be knowing, voluntary, and intelligent. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to

*Plea Advice*

Second, Petitioner argues he was denied effective assistance of counsel because he "would not have even entertained a guilty plea had it not been for the erroneous advice from defense counsel to do so." (Doc. 1, at 5). The Court finds that this ground was at least arguably exhausted in the state courts (*see* Ex. 9, Doc. 6-1, at 36-46; Exs. 17-18, Doc. 61, at 106-34) (arguing trial court abused its discretion by denying his motion to withdraw his guilty plea in part because he was not represented by highly competent counsel during the plea hearing). But for the reasons discussed below, it is without merit.

There is a strong presumption "that counsel's conduct falls within the wide range of reasonable professional assistance". *Strickland v. Washington*, 466 U.S. 668, 689 (1984). In order to overcome that presumption and demonstrate ineffective assistance of counsel, Petitioner must show that counsel's performance was, first, deficient, and second, prejudicial to Petitioner as a result of its deficiency. *Id.* at 687. To establish deficiency, "a defendant must show that counsel's representation fell below an objective standard of reasonableness." *Williams*, 529 U.S. at 390-91 (quoting *Strickland*, 466 U.S. at 688) (internal quotation marks omitted). The benchmark of ineffectiveness is whether "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. These standards apply to claims related to counsel's conduct in negotiated pleas as well as to trials. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

---

the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards]."); *Cook v. Wolfenbarger*, 2012 WL 3113183, at *6 (E.D. Mich.) ("Petitioner's claim that counsel was ineffective for failing to investigate his case, discuss a diminished capacity defense, or take other action during the pre-trial period is foreclosed by his plea and does not warrant relief.").

"To establish prejudice he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Williams*, 529 U.S. at 391 (quoting *Strickland*, 466 U.S. at 694). To satisfy the prejudice prong of the standard in this context, Petitioner must show a reasonable probability he would not have pleaded guilty. *Hill*, 474 U.S. at 59.

Further, when analyzing a *Strickland* claim under § 2254(d), review is "doubly deferential". *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). The key question "is whether there is *any reasonable argument* that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105 (emphasis added).

Petitioner argues counsel failed to maintain an attorney-client relationship, failed to evaluate whether Petitioner understood the nature of the proceedings, and failed to bring to the state court's attention that "he knew that Petitioner should not have entered into the plea." (Doc. 1, at 5). As he did to the state appellate court, Petitioner points this Court to counsel's statement during the hearing on Petitioner's motion to withdraw:

> [A]fter court after [Petitioner] pled guilty, he mentioned to me that he really doesn't understand what was going on even after we spent some time together earlier that day before we came into court when I went over the plea with him. So maybe I should have brought that to the Court's attention prior to taking the plea, which I did not; I thought he understood but possibly not so I'm a little concerned about the fact that it is a very serious case.
>
> A couple of lives are involved and we bring to the Court's attention the fact that he feels that he was not in his right mind; however, you want to say that, I just call it as it is. And I think that maybe he should get a chance to go to trial, which is what he wants to do.

(Doc. 6-2, at 30-31).

The Ohio Court of Appeals addressed this ineffective assistance claim:

{¶ 17} After careful review, we are unable to conclude that King was not represented by highly competent counsel during the plea hearing. While King may

13

have expressed some confusion during a private conversation with counsel *after* the plea hearing concluded, the record reflects that counsel spent time with King prior to the plea and carefully "went over the plea with him." In fact, counsel admitted that he believed King understood the nature of his plea based on their conversations prior to the plea hearing. In addition, King's understanding of the plea and its consequences is supported by his statements during the plea hearing. The record reflects that the trial court explained to King the effect of a guilty plea, the nature of the charges at issue, the potential penalties he faced, and the constitutional rights he was waiving by pleading guilty. King repeatedly stated that he understood the court's advisements and confirmed to the court that no threats or promises had been made to him in exchange for his plea. He further stated that while he was taking medication, he was thinking clearly and "underst[ood] everything that [was] happening." At no time did King express that he did not understand the matters of which he was advised. Under the totality of these circumstances, we find the record does not support King's vague contention that "counsel's advocacy was less than competent." Rather, the record reflects that King knowingly, voluntarily, and intelligently entered his guilty pleas after he was afforded a sufficient Crim.R. 11 colloquy.

*King*, 2018 WL 6317946, at *3 (emphasis in original).

Although Petitioner argues he would not have entered a guilty plea if not for counsel's allegedly-ineffective advice (Doc. 1, at 5), he has not shown that the state court decision to the contrary – finding counsel's conduct reasonable – was unreasonable. *See Harrington*, 562 U.S. at 105. He provides no evidence that counsel's conduct and advice was deficient to an objectively unreasonable level, and the record reveals no conduct that undermines the adversarial process; Petitioner therefore does not meet the *Strickland* standard. By declining to find error on this ground, the Ohio Court of Appeals neither made a decision contrary to or unreasonably applied federal law nor made a decision based on an unreasonable interpretation of the facts of the case. *Williams*, 529 U.S. at 405. The undersigned therefore recommends this claim be denied.

Guilty Plea

Petitioner next argues his guilty plea was not knowing and voluntary due to a medication side effect of confusion. Petitioner further argues the trial court failed to hold a sufficient hearing

14

on his motion to withdraw his plea, and failed to afford him "full and fair consideration". The undersigned finds this argument is in part non-cognizable, and in part meritless on AEDPA review.

A criminal defendant's waiver of his constitutional rights, in the form of a guilty plea, must be knowing, voluntary, and intelligent. *Brady v. United States*, 397 U.S. 742, 748 (1970). A plea is intelligent when a defendant "receives real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941) (internal quotation marks omitted)). A guilty plea is not voluntary "unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). To be "knowing", a guilty plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748.

The state appellate court addressed Petitioner's challenge to his guilty plea as follows:

{¶ 17} After careful review, we are unable to conclude that King was not represented by highly competent counsel during the plea hearing. While King may have expressed some confusion during a private conversation with counsel *after* the plea hearing concluded, the record reflects that counsel spent time with King prior to the plea and carefully "went over the plea with him." In fact, counsel admitted that he believed King understood the nature of his plea based on their conversations prior to the plea hearing. In addition, King's understanding of the plea and its consequences is supported by his statements during the plea hearing. The record reflects that the trial court explained to King the effect of a guilty plea, the nature of the charges at issue, the potential penalties he faced, and the constitutional rights he was waiving by pleading guilty. King repeatedly stated that he understood the court's advisements and confirmed to the court that no threats or promises had been made to him in exchange for his plea. He further stated that while he was taking medication, he was thinking clearly and "underst[ood] everything that [was] happening." At no time did King express that he did not understand the matters of which he was advised. Under the totality of these circumstances, we find the record does not support King's vague contention that "counsel's advocacy was less than competent." Rather, the record reflects that King knowingly, voluntarily, and intelligently entered his guilty pleas after he was afforded a sufficient Crim.R. 11 colloquy.

15

{¶ 18} King next argues that he was not given a complete hearing on his motion to withdraw because the court was "seemingly unwilling to give impartial consideration to counsel's concerns regarding King's understanding of his plea." In essence, King contends that once the trial court determined that Zoloft had not impaired King's ability to comprehend, the court failed to give adequate consideration to counsel's performance during the plea hearing.

{¶ 19} Viewing the transcript of the proceedings in its entirety, we find King was afforded a complete and impartial hearing on his motion to withdraw. The record does not support King's contention that the trial court did not sufficiently consider counsel's statement that King expressed confusion about the status of his case after the plea hearing concluded. To the contrary, the trial court permitted counsel to set forth arguments on behalf of King, including references to King's conversations with counsel after the plea hearing occurred. Ultimately, however, the court determined that King's alleged confusion or misunderstanding of his plea was not supported by the plea hearing transcript. Accordingly, we find the court's decision was not the product of impartial consideration. Rather, the trial court's judgment was rendered after careful consideration of the plea colloquy and upon confirmation from the administrator's of King's medication that "confusion is not a side effect of Zoloft."

{¶ 20} Finally, King contends that the trial court did not give full and fair consideration to his plea withdrawal request. Again, King argues that the trial court's judgment did not adequately consider the deficiencies in counsel's performance during the plea stage and, instead, depended "solely on the emails and investigation [the court] had done into the impact of Zoloft." For the reasons previously stated, we find the trial court gave full and fair consideration to King's plea withdrawal request. In this case, the trial court conducted a full hearing, heard arguments from the parties, reviewed the full transcript of the plea hearing, and carefully considered its communications with the jail psychiatric unit regarding King's medications. Ultimately, the trial court found King's argument to be baseless, noting that the record did not support King's position that his prescription medication interfered with his ability to make a knowing, intelligent, and voluntary plea. The trial court's conclusion is consistent with decisions of this court. *See State v. Senich*, 8th Dist. Cuyahoga No. 82581, 2003-Ohio-5082, ¶ 25 ("The mere fact that a defendant was on medication is not an indication that his or her plea was not knowing and voluntary."), citing *State v. Roberson*, 8th Dist. Cuyahoga No. 66523, 1995 WL 23343, 1995 Ohio App. LEXIS 110 (Jan. 19, 1995); *State v. Bowen*, 8th Dist. Cuyahoga Nos. 70054 and 70055, 1996 WL 715488, 1996 Ohio App. LEXIS 5612 (Dec. 12, 1996); *State v. Bembrey*, 8th Dist. Cuyahoga No. 59155, 1991 WL 184283, 1991 Ohio App. LEXIS 4358 (Sept. 19, 1991).

{¶ 21} Based on the foregoing, we find King was represented by highly competent counsel at the time of the plea, was given a full Crim.R. 11 hearing before entering his pleas, was afforded a complete and impartial hearing on his motion to withdraw, and the trial court gave full and fair consideration to the plea withdrawal request.

16

> Additionally, there is nothing in the record to suggest the trial court misapplied the *Peterseim* standard or otherwise acted unjustly or unfairly regarding the additional, relevant factors developed by the court. Accordingly, we find the trial court did not abuse its discretion in denying King's motion to withdraw his guilty plea.

*King*, 2018 WL 6317946, at *3-4.

As the state court recognized, Petitioner confirmed during his plea hearing that he was taking medication, but was still thinking clearly and understood what was happening. (Doc. 6-2, at 8). He declined to ask questions related to the nature of the charges or his rights once explained to him. *Id.* at 11. He confirmed he knew what he was doing, understood it, and wanted to do it; he then pleaded guilty. *Id.* at 13-15. After Petitioner moved to withdraw his guilty plea, the jail psychiatric unit confirmed to the trial court that the side effects of Petitioner's medication "wouldn't cause drowsiness or inability to understand what was going on." *Id.* at 26; *see also id.* at 47 ("And the nurse in the Psych Unit says: 'Unfortunately, confusion is not a side effect of Zoloft.'").

The Ohio appellate court noted that these facts in the record reflect "that King knowingly, voluntarily, and intelligently entered his guilty pleas". *King*, 2018 WL 6317946, at *3. A state court's factual finding that a petitioner's guilty plea was properly made is generally presumed to be correct upon federal review. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The State fulfills its burden to show a plea satisfies federal constitutional standards by providing the transcript of state court proceedings that indicates the plea was properly made. *Id.* The State has done so in this case, and by finding Petitioner's plea was made knowingly, intelligently, and voluntarily, the state court has reasonably interpreted the facts of the record and applied federal law. *Williams*, 529 U.S. at 405. That is, Petitioner has not shown it was an unreasonable application of clearly established Supreme Court precedent for the state court to find his guilty plea was

knowing, voluntary, and intelligent. *See, e.g.*, *Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 652-53 (E.D. Mich. 2002) ("Nor is there record support for his claim that prescribed psychotropic drugs rendered him unable to understand the proceedings."); *Snyder v. Warden, Warren Corr. Inst.*, 832 F. Supp. 2d 827, 832-34 (S.D. Ohio 2011) (finding no error in state court denial of motion to withdraw based on Petitioner's claim that he was under the influence of a prescription drug). The undersigned therefore declines to find error on this ground.

*Insufficiency of Hearing / Abuse of Discretion*

Within his argument about the guilty plea, Petitioner argues the trial court failed to afford him a sufficient hearing on his motion to withdraw, and abused its discretion in denying that motion. *See* Doc. 1, at 6-7. Although he concedes the trial court held a hearing, Petitioner argues this hearing was not "full and impartial" because the court did not properly consider his contention that the side effects of Zoloft rendered him incompetent to enter a knowing and voluntary guilty plea. *Id.* at 6. In particular, Petitioner contends the failure of "the court to subpoena on the record" jail personnel regarding Petitioner's medications rendered the hearing inadequate. *Id.* More broadly, Petitioner also argues the trial court failed to offer "full and fair consideration" to his motion to withdraw his guilty plea as required and therefore abused its discretion in denying the motion. (Doc. 1, at 7).

These claims are non-cognizable. To obtain habeas relief, a petitioner must show a state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States". 28 U.S.C. § 2254(d)(1). Therefore, to the extent that a habeas petitioner makes a claim that is based solely on a violation of state law, the petitioner has failed to state a claim on which federal habeas relief can be granted. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991)

18

("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). A perceived error of state law may serve, however, as the basis for federal habeas relief if the error resulted in the petitioner being denied fundamental fairness in the trial process. *Id.* But courts "have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990).

Petitioner's claims regarding the hearing and the trial court's denial of his motion to withdraw are based on *state* law. First, there is no federal constitutional right to withdraw a guilty plea. *United States v. Woods*, 554 F.3d 611, 613 (6th Cir. 2009) ("The defendant is not entitled to . . . the withdrawal of her plea as a matter of right"); *Hynes v. Birkett*, 526 F. App'x 515, 521 (6th Cir. 2013) ("Hynes has no federal due process right to seek to withdraw his guilty plea."); *Dickey v. Warden, Lebanon Corr. Inst.*, 2010 WL 92510, at *7-8 (S.D. Ohio) ("[T]here is no federal constitutional right, or absolute right under state law, to withdraw a guilty plea.") (citing cases). Generally, therefore, a federal habeas court "lacks authority to adjudicate a claim that the state court improperly denied a motion to withdraw a guilty plea." *Artiaga v. Money*, 2007 WL 928640, at *2 (N.D. Ohio); *see also Xie v. Edwards*, 1994 WL 462143, at *2 (6th Cir.) (unpublished) (whether trial court abused discretion in denying motion to withdraw plea is question of state law). And "in the absence of a constitutional violation in the taking of the plea, a trial court's abuse of discretion in denying a subsequent motion to withdraw the plea does not trigger constitutional concerns." *Weaver v. Moore*, 2008 WL 697705, at *12 (S.D. Ohio); *see also Johnson v. Hudson*, 2009 WL 1203400, at *7 (N.D. Ohio) ("[T]o the extent that Johnson's argument in the first element of ground one is based only on the trial court's purported abuse of discretion in denying a pre-

sentence motion to withdraw the guilty plea, an alleged violation of state law, Johnson has failed to state a claim upon which federal habeas relief may be granted.").

Similarly, Petitioner's claim regarding the lack of "full and fair consideration" is drawn from the *state law* factors a trial court must meet in order to be found to have not abused its discretion in denying a plea withdrawal motion. *See State v. Peterseim*, 428 N.E.2d 863, 864 (Ohio Ct. App. 1980) ("A trial court does not abuse its discretion in overruling a motion to withdraw: (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request.").

As set forth above, the state court treatment of Petitioner's guilty plea did not violate any clearly established federal law and the state court determination finding Petitioner's plea knowing, intelligent, and voluntary was not unreasonable. In the absence of a federal constitutional claim, the undersigned defers to the Ohio court's interpretation of Ohio law and habeas relief does not lie for this ground. The undersigned therefore recommends Petitioner's claims regarding the trial court's abuse of discretion in denying his guilty plea and the trial court's "failure of full and fair consideration" be denied as non-cognizable.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition be DENIED.

s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).